*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0209p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CLAUDE L. BASSETT,

　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

THE NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION and UNIVERSITY OF KENTUCKY
ATHLETIC ASSOCIATION,

　　　　　　　　*Defendants-Appellees.*

>

No. 06-5795

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 04-00425—Joseph M. Hood, District Judge.

Submitted: March 13, 2008

Decided and Filed: June 9, 2008

Before: CLAY and McKEAGUE, Circuit Judges; BOYKO, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Robert R. Furnier, FURNIER & SIMMONDS, Cincinnati, Ohio, for Appellant. Edward H. Stopher, Scott A. Davidson, BOEHL, STOPHER & GRAVES, Louisville, Kentucky, Kevin G. Henry, Stephen L. Barker, STURGILL, TURNER, BARKER & MOLONEY, Lexington, Kentucky, for Appellees.

---

## OPINION

---

　　　BOYKO, District Judge. Appellant Claude L. Bassett ("Bassett") was an assistant football coach for the University of Kentucky ("UK") from 1997-2000 when he resigned due to allegations of The National Collegiate Athletics Association ("NCAA") rules infractions. Bassett filed suit against NCAA, the Southeastern Conference ("SEC") and the University of Kentucky Athletic Association ("UKAA"), alleging conspiracy to violate antitrust laws, fraud, civil conspiracy and tortious interference with contract. The district court granted NCAA's, the UKAA's and the SEC's motions to dismiss the antitrust and civil conspiracy claims and granted NCAA's and the SEC's

---

[*] The Honorable Christopher A. Boyko, United States District Judge for the Northern District of Ohio, sitting by designation.

motions to dismiss Plaintiff's fraud claims. Later, the district court granted summary judgment for NCAA and the UKAA on Plaintiff's remaining claims. Bassett now appeals the district court's granting of NCAA's motion to dismiss the antitrust claim and the district court's granting of summary judgment on the UKAA's fraud and alleged breach of contract claims.

The Appellant's appeal is not well taken. We find the district court correctly determined Appellant's antitrust claim was not commercial in nature and failed to allege an antitrust injury. Furthermore, Appellant failed to demonstrate reasonable reliance and causation on his fraud claim and Appellant failed to plead a breach of contract claim and, even if he did, such contract would be void *ab initio* as against public policy.

## I.

Appellant Claude L. Bassett was an assistant football coach for the University of Kentucky ("UK") from 1997-2000 when he resigned due to allegations of NCAA rules infractions. Bassett coached at Brigham Young University for twelve years prior to joining the UK football program and thereafter, Bassett was hired by the UK head football coach, Hal Mumme, as recruiting coordinator and assistant coach. Bassett's employment contract was with the UKAA, which serves as the athletic department for the UK. On November 19, 2000, Larry Ivy, the UK's athletic director, called Bassett and Mumme to a meeting, wherein Ivy confronted Bassett about alleged rules violations. In the course of the meeting, Ivy asked Bassett to resign in light of the allegations of impropriety. In exchange for Bassett's resignation, Ivy assured Bassett no further actions would be taken against him. As a result of the November 19, 2000 meeting Bassett resigned. The following day, the UK disclosed that Bassett, along with several other assistants, had been fired. The UK conducted an internal investigation of its football program to determine if any NCAA rules violations occurred. The investigation proceeded with assistance from the SEC Commissioner and lasted through February 2001. On February 28, 2001, the UK turned over the results of its internal investigation to NCAA. As a result, NCAA issued official inquiry letters to Bassett, regarding alleged infractions, who responded in writing through his counsel. Bassett declined to appear at the hearing before NCAA, to address allegations which included, improper recruiting inducements provided to prospective student athletes and high school coaches and academic fraud in aiding enrolled student athletes by preparing their papers or having student assistants type papers for enrolled student athletes. Shortly thereafter, NCAA imposed sanctions against the UK for violations of NCAA rules. In addition to the sanctions against the UK, NCAA issued a show cause order requiring Bassett and any NCAA member institution seeking to hire him in an athletically related position, from January 21, 2002 through January 30, 2010, to appear before NCAA Division I Committee on Infractions to "consider whether the member institution should be subject to the show cause procedures of Bylaw 19.6.2.2-(1), which could limit the coach's athletically related duties at the new institution for a designated period." On September 17, 2004, Bassett filed his Complaint against the SEC, NCAA and the UKAA.

## II.

On appeal, Bassett claims the district court erred in granting Appellee NCAA's motion to dismiss Bassett's antitrust claim on the basis of its finding that NCAA's enforcement of its rules did not affect commerce and Bassett had failed to state an antitrust injury. Bassett further contends the district court erred in granting the UKAA's summary judgment motion on Bassett's fraud and breach of contract claims when it found Bassett failed to demonstrate causation and reasonable reliance.

### *Standard of Review*

We have jurisdiction to review the final decision of a district court under 28 U.S.C. §1291. A district court's dismissal of a case, pursuant to Fed. R. Civ. P. 12(b)(6), is a question of law

subject to *de novo* review. *Kottmeyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). "The Supreme Court has recently clarified the pleading standard necessary to survive a Rule 12(b)(6) motion." *CGH Transport Inc. v. Quebecor, World, Inc.,* No. 06-6399, slip copy 2008 WL 116385, at *2, (6th Cir. Jan. 8, 2008) citing *Bell Atl. Corp. v. Twombly ,* --- U.S. ----, 127 S. Ct. 1955 (2007). Factual allegations contained in a complaint must 'raise a right to relief above the speculative level.' *Id.* at 1965. *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. "In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001).

We review orders granting summary judgment and/or partial summary judgment *de novo*. *Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006), *Ability Ctr. v. City of Sandusky,* 385 F.3d 901, 903 (6th Cir. 2004). "In conducting that review, we must assume the truth of the non-moving party's evidence and construe all inferences from that evidence in the light most favorable to the non-moving party." *Ciminillo* at 464. "A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party." *Id.*

### III.

### *Bassett's Antitrust Claim Against NCAA*

Bassett's Complaint alleges NCAA, the UKAA and the SEC conspired to prevent Appellant from coaching at any NCAA member school in violation of the Sherman Antitrust Act, 15 U.S.C. §1-2 (2000) and the Clayton Act, 15 U.S.C. §15 (2000), as the conspiracy amounts to a group boycott. The district court determined Bassett's antitrust allegation failed to state a claim because NCAA's actions were not commercial in nature and therefore, did not violate the Sherman Act. The district court held "enforcement of the rules at issue here is not within the purview of antitrust law as it is not related to the NCAA's commercial or business activities." (JA 88). Citing *Smith v. NCAA,* 139 F.3d 180, 186 (3d Cir. 1999), the district court held, "[r]ather than intending to provide the NCAA or any of its member schools with a commercial advantage, enforcement of rules governing recruiting, improper inducements, and academic fraud 'primarily seek[s] to ensure fair competition in intercollegiate athletics.'" (JA 88).

Even if they were commercial in nature, the district court reasoned, Bassett had still failed to state a claim because he failed to plead an antitrust injury. The district court relied on *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977), which defined antitrust injury as (1) "injury of the type the antitrust laws were intended to prevent" and (2) injury "that flows from that which makes defendants' acts unlawful." The district court went on to say, "because the purpose of the antitrust laws is to protect competition rather than competitors, a plaintiff must allege injury, not only to himself, but to a relevant market. Thus, failure to allege an anti-competitive impact on a relevant market amounts to a failure to allege an antitrust injury." (JA 88) (citing *Banks v. National Collegiate Athletic Ass'n*, 977 F.2d 1081, 1087 (7th Cir. 1992), *Brown Shoe Co. v. United States,* 370 U.S. 294, 320 (1962)). The district court determined Bassett's Complaint "failed to allege any anticompetitive effect on an identifiable market, failed to allege any decrease in the supply or quality of coaching services, increase in cost of coaching services, or any harm to consumers resulting from his punishment." (JA 89). The district court concluded, "Bassett's conclusory allegations of an antitrust injury-unsupported by any factual allegations that resemble a cognizable antitrust claim-are insufficient." (JA 89).

On appeal, Bassett contends "the trial court misunderstood the trade practice at issue." While Bassett claims the district court incorrectly presumed Bassett was attacking NCAA's standards for defining improper conduct, Bassett argues he was challenging NCAA's enforcement of its standards. Bassett contends NCAA permits member schools to deflect blame from themselves to coaches and such action is commercial in nature as it affects the labor market for all college coaches. "The restraint at issue here is NCAA's boycott of coaches unjustly or excessively punished because of its disciplinary system. These bans affect interstate commerce by preventing schools across America from hiring boycotted coaches to generate sports revenue and by preventing these coaches from seeking gainful employment with NCAA institutions." (Final Reply Brief of Plaintiff-Appellant at 6-7). "The restraint at issue here-the group boycott of coaches without adequate due process-is rooted in the commercialization of intercollegiate athletics." (*Id.* at 11). Bassett contends NCAA's disciplinary scheme impacts commerce because the discipline involves financial sanctions. Bassett argues his Complaint alleges sufficient facts demonstrating the commercial nature of the trade restraint. According to Bassett, the show-cause sanction issued by NCAA may end a coach's career.

Bassett cites to paragraphs 16-24 and 51-55 of his Complaint, which he contends provide the necessary facts to support his antitrust claim against NCAA. The pertinent paragraphs of Bassett's Complaint may be summarized as follows:

(a)     Bassett spends a great deal of time exposing what he calls the "student-athlete myth" and the money-making scheme of college football.

(b)     The thrust of his allegations is how NCAA relies on its members to perform the bulk of investigating alleged infractions, yet fails to abide by the due process guarantees under NCAA's constitution and bylaws. He then alleges a conspiracy by NCAA which violates the Sherman Act and Clayton Act via denial of due process.

NCAA contends Bassett admitted to rules infractions while coaching at the UK and therefore, the show cause order issued against him is the result of his own admitted misconduct and not a conspiracy to prevent him from coaching in violation of federal antitrust laws. NCAA argues it is ironic that Bassett complains the show-cause order and sanctioning conduct constitute commercial activity when the rules enforced by NCAA, in fact, punish the attempted commercialization of student athletes and amateur intercollegiate athletics. Furthermore, NCAA contends Bassett has failed to allege an antitrust injury. Rather, according to NCAA, Bassett's Complaint alleges only injury to Bassett and is devoid of facts alleging anticompetitive effects on a discernible market.

NCAA also contends Bassett is barred by the doctrines of res judicata, collateral estoppel and "law of the case" because he failed to appeal the district court's dismissal of Bassett's similar claims against the SEC and the UKAA, which are now final judgments. Finally, NCAA contends the district court, on summary judgment, found Bassett had failed to demonstrate that NCAA acted improperly in following its established enforcement procedures. Therefore, NCAA claims Bassett is collaterally estopped from relitigating the propriety of NCAA's enforcement process.

### *Commercial Activity*

The Sherman Act states, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The United States Supreme Court has held Congress intended to outlaw only "unreasonable" restraints. *State Oil Co. v. Khan,* 522 U.S. 3, 10 (1997). If a court determines the activity at issue is subject to the Sherman Act it must determine if the restraint on trade is unreasonable under the *per se* rule or the rule of reason. "As a consequence, most antitrust claims are analyzed under a 'rule of reason,' according to which the finder of fact must decide

whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Id.* "Some types of restraints, however, have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful *per se*." *Id.* (citing *Northern Pacific R. Co. v. United States,* 356 U.S. 1, 5, (1958)). *"Per se* treatment is appropriate "[o]nce experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it." *Id.* In the case before this Court, Section One of the Sherman Act applies if NCAA's enforcement process and sanctions are commercial in nature. *See Worldwide Basketball & Sport Tours, Inc. v. NCAA,* 388 F.3d 955, 958 (6th Cir. 2004).

The Clayton Act provides a private right of action when a person is "injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. The district court, in analyzing Bassett's Sherman Act/Clayton Act claim, determined the Sherman Act was not applicable because NCAA action was not commercial in nature and Bassett's Complaint failed to allege an antitrust injury. The district court relied on our decision in *Worldwide Basketball and Sport Tours, Inc. v. NCAA,* 388 F.3d 955, 988 (6th Cir. 2004), which held the Sherman Act applies when the alleged violation is commercial in nature. The district court determined the alleged violation in Bassett's Complaint stemmed from NCAA's "enforcement program and the imposed sanctions arising therefrom." Therefore, in order for the Sherman Act to apply, the enforcement action "must be commercial in nature." (JA 87). In examining court precedent in applying the Sherman Act to NCAA cases, the district court noted that some NCAA rules had been found to be commercial in nature. *See Worldwide Basketball* at 955; *National Collegiate Athletic Association v. Board of Regents,* 468 U.S. 85, 98 (1984). The district court also discussed a case wherein NCAA action was held to be noncommercial. *See Smith v. NCAA*, 139 F.3d 180, 186 (3rd Cir. 1998) *vacated on other grounds by NCAA v. Smith,* 525 U.S. 459 (1999). The district court found the reasoning of the Third Circuit in *Smith* applicable to the facts in this case. In *Smith*, the issue before the Court was NCAA's eligibility rules, and the Third Circuit affirmed dismissal of the antitrust claims against NCAA, holding they were not commercial. The district court in the present case held, like the eligibility rules in *Smith*, NCAA's enforcement of its rules governing recruiting, improper inducements and academic fraud, did not give NCAA a competitive advantage, rather, they were intended to "ensure fair competition in intercollegiate athletics." (JA 88), quoting *Smith* at 185.

We agree with the district court's analysis. In order to state a claim under the Sherman Act there must be a commercial activity implicated. As we held in *Worldwide Basketball,* the appropriate inquiry is "whether the rule itself is commercial, not whether the entity promulgating the rule is commercial." *Worldwide* at 959. Although the question before us is whether the enforcement activities of NCAA violate the Sherman Act and not a particular rule, the analysis must focus on the enforcement action itself and not NCAA as a commercial entity. The *Smith* decision further supports such analysis; "rather than focus on Smith's alleged injuries, we consider the character of the NCAA's activities." *Smith* at 185. Bassett's Complaint contains considerable information on the size and scope of college football and the revenues generated by it. The Complaint is wholly devoid of any allegation on the commercial nature of NCAA's enforcement of the rules it determined Bassett had violated. Bassett's Complaint contends NCAA's enforcement process violated its own due process requirements and, as a result, constitutes a Sherman Act violation. We find Bassett's Complaint lacks the critical commercial activity component required to permit application of the Sherman Act.

Similar to the eligibility rules in *Smith*, NCAA's rules on recruiting student athletes, specifically those rules prohibiting improper inducements and academic fraud, are all explicitly non-commercial. In fact, those rules are *anti-commercial* and designed to promote and ensure competitiveness amongst NCAA member schools. Violation of the applicable NCAA rules gives

the violator a decided competitive advantage in recruiting and retaining highly prized student athletes. It also violates the spirit of amateur athletics by providing remuneration to athletes in exchange for their commitments to play for the violator's football program. Finally, violators of these rules harm the student-athlete academically when coaches and assistants complete coursework on behalf of the student-athlete.

If the rules themselves and the corresponding sanctions are not commercial, as the reasoning in *Smith* supports, then the enforcement of those rules cannot be commercial. As long as the enforcement of non-commercial rules is reasonably and rationally related to the rules themselves, we find enforcement is a non-commercial activity. Although Bassett seeks to compartmentalize the enforcement in his analysis, we must examine the activity of NCAA, and that examination encompasses both the rule and its enforcement. To do otherwise would result in an incomplete analysis contrary to *Worldwide Basketball.* Such an examination demonstrates the enforcement of non-commercial rules is not a commercial activity, therefore, we find the allegations in Bassett's Complaint fail to state a claim under the Sherman Act and we affirm the dismissal by the district court of Bassett's antitrust claim.

The district court also determined Bassett failed to allege an antitrust injury. The district court held Bassett's Complaint alleges only injury to Bassett and does not allege injury to a relevant market as required by case law. (JA 89), (citing *Banks v. National Collegiate Athletic Ass'n*, 977 F.2d 1081, 1087 (7th Cir. 1992); *Brown Shoe Co. v. United States,* 370 U.S. 294, 320 (1962)). "Taken as a whole, the legislative history illuminates congressional concern with the protection of competition, not competitors, and its desire to restrain mergers only to the extent that such combinations may tend to lessen competition." *Brown Shoe* at 320. Bassett's Complaint alleges that many coaches, including Bassett, have been unfairly investigated or sanctioned through NCAA's enforcement process that fails to apply the due process protections contained in NCAA's enforcement process. While the Complaint contains numerous allegations of the unfairness of the proceedings that resulted in Bassett's show cause sanction, the Complaint is devoid of any allegation of the anticompetitive effect on the coaching market as pointed out by the district court. In *Banks*, the Seventh Circuit held,

> the fundamental requirement at issue in this dispute is that of a sufficient allegation of anticompetitive effects that would result or have resulted from the defendants' actions; the absence of such allegations is ordinarily fatal to the existence of a cause of action. The purpose of the Sherman Act is to rectify the injury to consumers caused by diminished competition; it is for this reason that Congress provided a treble damage recovery for private parties willing to initiate an enforcement action. Thus, the plaintiff must allege, not only an injury to himself, but an injury to the market as well. . . .

*Banks* at 1087-88.

This circuit has held, "[a] private antitrust plaintiff, in addition to having to show injury-in-fact and proximate cause, must allege, and eventually prove, "antitrust injury." *In re Cardizem CD Antitrust Litigation,* 332 F.3d 896, 909 (6th Cir. 2003). Plaintiff, alleging violation of the Sherman Act, may allege antitrust injury either by alleging the plaintiff's injury was caused by defendant's engaging in antitrust violations, or by alleging the antitrust violation was the necessary predicate for its injury. *Id.* at 914.

Bassett's Complaint contains no allegations of the effect of NCAA's enforcement of its non-commercial rules on the coaching market. It merely states NCAA's actions have resulted in the unfair investigation and sanction of coaches denied due process. Bassett's alleged injury stems from the denial of his due process rights and the conspiracy which deprived him the opportunity to

defend himself against "rules violations that led to the ban." Bassett does not allege the ban resulted from some anticompetitive purpose. Rather, as the Complaint states, appellant's injury, i.e. the ban, was the result of the rules violations. Therefore, we agree with the district court that Appellant's claim fails to allege an antitrust injury sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and we affirm the district court's holding accordingly.[1]

### *Fraud*

Bassett's Complaint alleges the UKAA and the SEC employees lied to Bassett, encouraging him to take actions depriving him of the due process guaranteed him under both his employment contract with the UKAA and NCAA rules. That lie was the statement by Ivy to Bassett that if he resigned, no further investigation or prosecution would occur. Because the UKAA employees reported Bassett's alleged violations to the UKAA and NCAA, Bassett's injury, i.e. the show cause order, occurred.

On summary judgment, the district court held, "[p]laintiff has not presented 'probative evidence' that his reliance on Ivy's promise that his own violations would not be investigated was reasonable under the circumstances." (JA 116). The district court examined Bassett's contention that he naively relied on Ivy's representation in light of Bassett's sixteen years of coaching. The district court found NCAA charged Bassett with thirty-five violations, twenty-five of which Bassett admitted to violating in his October 12, 2001 response to NCAA's official inquiry. (JA 119). In finding for the UKAA, the district court held that under Kentucky law, "equity will grant no relief to a complaining party who has means of knowledge of the truth or falsity of representations." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1447 (6th Cir. 1993). The district court found Bassett could not demonstrate reasonable reliance on Ivy's promise not to investigate, insofar as Ivy's statement "bound the University to refrain from investigating." (JA 111). The district court found Bassett admitted to annual apprisal of NCAA rules, attended annual meetings at which he would take a test on NCAA rules, Bassett's own employment contract stated he could be terminated for violations of NCAA and/or the SEC rules, and Bassett testified he was aware NCAA member schools and coaches had a duty to self-report violations to NCAA. The district court quoted Bassett's November 15, 2001 letter to NCAA stating, "Coach Bassett does not begrudge Larry Ivy-someone the coach holds in high regard-for pursuing the investigation, since he was probably required under NCAA rules to do so." (JA 253). Because of Bassett's knowledge that the UK was required to self-report, he could not reasonably rely on Ivy's promise. The district court also

---

[1]Finally, though this issue was not raised by NCAA, we find an additional ground for dismissal of Bassett's antitrust claim. Paragraph 52 of Appellant's Complaint states,

> The NCAA, SEC and the UKAA *conspired* to prevent Coach Bassett from coaching at any of the NCAA's over 1200 member schools. This **conspiracy** violates the Sherman Antitrust Act (15 U.S.C. §s1-2) and the Clayton Act (15 U.S.C. §15) as an unlawful group boycott of Coach Bassett. In banning Coach Bassett from coaching, these defendants violated the letter and spirit of the NCAA rules designed to afford Coach Bassett due process in defending himself against the rules violations that led to the ban. (Emphasis added).

As alleged in Bassett's Complaint, it is the conspiracy of three parties -NCAA, the SEC and the UKAA- that resulted in the claimed violation of the Sherman Act and constitutes a group boycott. (Notably, Bassett has not alleged a conspiracy between NCAA's member institutions.) However, once the district court dismissed Bassett's antitrust conspiracy claims against NCAA's alleged co-conspirators, the SEC and the UKAA, Bassett's antitrust conspiracy claim against NCAA failed because, as Bassett himself recognizes, a conspiracy requires more than one conspirator. Moreover, by failing to appeal the dismissal of his antitrust claims against the SEC and the UKAA, Bassett has effectively abandoned his antitrust conspiracy claim against NCAA. In other words, Bassett's failure to contest the dismissal of his claims against NCAA's alleged co-conspirators means that he is asking this Court to find that, despite the absence of any co-conspirators, he has still alleged that NCAA was involved in a conspiracy. Bassett would then have us remand this case to the district court so that it could preside over a conspiracy claim with only one conspirator, NCAA. We cannot logically entertain such arguments.

determined Bassett failed to prove his damages were caused by the UKAA's allegedly fraudulent actions.

Bassett contends his fraud claim "isn't so much that the investigation against him went forward. It's that he was tricked into giving up his due process rights as a UKAA employee, rights which would have allowed him to better defend himself when the investigation took place." (Appellant's Final Reply Brief at 18). Also, Bassett contends he presented evidence that the UK routinely ignored its NCAA reporting obligations. Further, Bassett contends he suffered injury because he relinquished his due process rights with the UK's internal investigation when he resigned. Because NCAA investigation heavily relied on the UK's investigation, Bassett claims he suffered damages because he was punished for many infractions he did not commit.

The UKAA contends the district court correctly determined that under Kentucky law Bassett could not demonstrate reasonable reliance on Ivy's promise. The UKAA argues Bassett resigned for a non-NCAA violation, taking a $500.00 check payable to the UK and depositing it in his own checking account. Later, when NCAA violations by Bassett began to surface, Bassett publicly confessed to several infractions and, once officially charged by NCAA, Bassett's counsel admitted Bassett committed at least ten infractions. Based on this evidence, the district court properly concluded Bassett could not reasonably rely on Ivy's promise and could not prove injury attributable to the UKAA in light of his own confessions of impropriety.

"In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows: (a) material representation (b) which is false (c) known to be false or made recklessly (d) made with inducement to be acted upon (e) acted in reliance thereon and (f) causing injury." *United Parcel Service v. Rickert,* 996 S.W.2d 464, 469 (Ky. 1999), (citing *Wahba v. Don Corlett Motors, Inc.,* 573 S.W.2d 357, 359 ( Ky. App. 1978)). "In Kentucky, a claimant may establish detrimental reliance in a fraud action when he acts or fails to act due to fraudulent misrepresentations." *Rickert*, 996 S.W.2d at 469.

We find the district court properly presented and relied on relevant Kentucky law. It is undisputed Bassett knew of the UK's duty to report infractions. Bassett resigned when confronted with a non-NCAA violation for depositing a UK designated check into his personal bank account, a charge he admitted to at deposition. As stated above, the district court found ample evidence Bassett knew violations must be reported. Bassett now contends at the time he resigned there were only unsubstantiated rumors of violations and there was no obligation on the UK to report those rumors. However, the October 12, 2001 letter from Bassett's counsel to NCAA states, "[w]hen UK's athletic director Larry Ivy first confronted Coach Bassett with allegations of impropriety the day after the 2000 football season ended, Coach Bassett admitted to the allegations on the spot and agreed to resign in the best interests of UK football." (JA 240). This evidence contradicts Bassett's contention he resigned after being tricked into forsaking his due process rights. He admitted to the allegations and resigned in the best interest of UK football. Furthermore, his knowledge of the self-reporting requirements defeats any reasonable reliance on the alleged misrepresentation by Ivy. That the UK failed to report past violations is not relevant to their obligations to report and Bassett's reasonable reliance. Bassett knew of the UK's obligations to report, admitted he violated NCAA rules and admitted he should be punished for his violations. Kentucky law as cited by the district court holds, "if the truth or falsehood of the representation might have been tested by ordinary vigilance and attention, it is the party's own folly if he neglected to do so, and he is remediless." *Mayo Arcade Corp. v. Bonded Floors Co.,* 41 S.W.2d 1104, 1109 (Ky. Ct. App. 1931). Bassett knew the moment the representation was made it contravened the obligations Ivy and Coach Mumme had to report the violations. Therefore, we find Appellant could not have reasonably relied on the representations made by Ivy and find Appellant's resignation was voluntary, in the best interest of UK football and due to his own admission of impropriety.

Finally, we agree the Bassett's injuries were due to his own admitted misconduct and not because of the UKAA's alleged fraud. But for Bassett's own conduct, he might still be coaching at the UK today.

### Breach of Contract

Bassett contends his Complaint could be construed as alleging a breach of contract action based on Ivy's promise in exchange for Bassett's resignation. The district court, without actually finding a breach of contract action was alleged, found the purported contract void *ab initio* as against public policy.

We find no breach of contract claim was alleged. Bassett's Complaint in its caption states "Complaint for Antitrust, Fraud, Civil Conspiracy and Tortious Interference with Prospective Contractual Relations with Jury Demand". (AJA 21). The Complaint alleges four individually designated counts captioned Antitrust and Class Action, Fraud and Civil Conspiracy, Tortious Interference with Prospective Contractual Relations and Other Claims (unspecified). Neither the facts as alleged in Bassett's Complaint nor the Prayer for Relief provides a basis for breach of contract.

Though liberally construed, Complaints drafted by attorneys are held to a more stringent standard than those drafted by *pro se* litigants. *See Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996) (citation omitted). Although the standard of review is liberal, it requires more than bare assertions of legal conclusions. *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726-27 (6th Cir. 1996). The complaint must "give the defendants 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* at 726. We find Bassett's Complaint never gave the UKAA fair notice of a breach of contract claim. As Bassett was represented by counsel at the filing of the Complaint, we will not give such a liberal construction to allow a breach of contract claim when no such claim was pled. In fact, it appears from the record it was the UKAA's position in its Motion to Dismiss, (JA 786) that Bassett's fraud action could not be a fraud action, as it was based on a promise that was outside Ivy's authority and void against public policy. In discussing Bassett's fraud claim, the UKAA argued, "at most, it is merely a breach of contract which can only be enforced by an action on the contract. But such a contract would be against University policy and public policy, and thus unenforceable, regardless." *Id.* It was the UKAA's interpretation that, at most, Bassett's fraud claim amounted to a claim for breach of an unenforceable contract. (JA 76). The UKAA's interpretation of Bassett's claim, even if correct, does not relieve Bassett of his legal duty to properly designate, allege and give notice to the UKAA of his cause of action. We will not allow Bassett to benefit from the UKAA's "re-designating" Bassett's cause of action from fraud to breach of contract when Bassett is in complete control of his Complaint. To hold otherwise encourages sloppy pleading and speculative causes of action.

Moreover, even if we found Bassett's Complaint stated a claim for breach of contract, we agree with the district court's holding that such a contract, whereby both parties agreed to disregard their obligations to report violations and obligations to their employer, would be unenforceable under Kentucky law. Citing *Commonwealth of Kentucky Tourism Development Cabinet v. Whitworth,* 74 S.W.3d 695, 700 (Ky. 2002), for the proposition that, a "contract is void *ab initio* if it seriously offends law or public policy," the district court found that even if it were to construe Bassett's claims as a breach of contract, such contract required both parties to forego their obligations to their employer and would constitute a "breach of their duties of loyalty to their employer." (JA 119). The district court's opinion states, "contracts that require an employee to breach his fiduciary duty to his employer are illegal and void under Kentucky law." *In re Big Rivers Elec. Corp.*, 233 B.R. 726, 736 (Bankr. W.D. Ky. 1998) (citing *Kessler v. Jefferson Storage Corp.*, 125 F.2d 108, 110 (6th Cir. 1941) (finding that "such agreements are against the public policy of securing faithful discharge of duties by persons holding positions of trust and confidence, . . .

agreements tending to cause unfaithful conduct by fiduciaries are illegal because they are, in effect, agreements to wrong or defraud persons whose interest the fiduciaries have in charge" (citations omitted)).  Bassett's admitted knowledge of self-reporting obligations of himself and Ivy, coupled with his admission that he violated NCAA rules, necessarily renders any agreement to circumvent those obligations, in order to suppress discovery of Bassett's improprieties, void.

Therefore, we affirm the district court's dismissal of Bassett's antitrust claim against NCAA; affirm its granting summary judgment for the UKAA on Bassett's fraud claim and find no breach of contract claim was alleged in Bassett's Complaint and, therefore, is not before this Court.

Finally, the Court finds Bassett's Appeal was not frivolous and declines to award sanctions and costs.