ARCARE, INC., Plaintiff

v.

CENTOR U.S. HOLDINGS, INC., et al., Defendants

Case No. 3:17CV891

United States District Court, N.D. Ohio, Western Division.

Signed 09/28/2017

David Polan Meyer, Matthew R. Wilson, Meyer Wilson, Columbus, Ohio, Randall K. Pulliam, Carney Bates & Pulliam, Little Rock, Arkanas, for plaintiff.

David S. Almeida, Benesch Friedlander, Coplan & Aronoff, Chicago, Illinois, David M. Kreuger, Benesch Friedlander, Coplan & Aronoff, Cleveland, Ohio, for defendant.

## ORDER

James G. Carr, Sr., U.S. District Judge

This putative "junk fax" class-action case under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, is back before me on the plaintiff's motion for leave to file an amended complaint. (Doc. 15).

I previously held that ARcare failed to state a plausible claim against either of the defendants, Centor U.S. Holdings, Inc., and Centor, Inc. (collectively, Centor). *ARcare, Inc. v. Centor U.S. Holdings, Inc.*, 2017 WL 3621809 (N.D. Ohio). The decision turned principally on ARcare's failure to allege either when it had received the junk faxes or the fax number from which the faxes originated, as well as ARcare's inability to link the faxes themselves to the defendants. *Id.* at *3–4.

The dismissal was without prejudice, however, to the filing of a motion for leave to file an amended complaint. *Id.* at *4.

ARcare has now submitted its proposed amended complaint. (Doc. 15–1). Because that submission adequately cures the deficiencies of the prior complaint, I grant ARcare's motion.

## Background

ARcare provides healthcare and pharmacy services at its more than thirty locations in rural Arkansas. (Doc. 15–1 at ¶4).

In the course of its business, ARcare "relies upon fax machines to operate and provide services to its patients." (*Id.*). The company "conservatively estimates" that it receives "several thousand unwanted and unsolicited faxes each year." (*Id.*). This is bothersome to ARcare and its employees, who must "wade through dozens of unsolicited faxes from pharmaceutical and other companies selling their products to find vital incoming faxes, such as prescription refills and insurance authorizations." (*Id.*).

Sometime in the first quarter of 2017, ARcare received at least two unsolicited faxes that advertised two kinds of Centor products. (*Id.* at ¶¶14, 16, 23). One fax directs the recipient to view Centor's website, one invites the recipient to contact Centor via email, and both direct the recipient to contact Centor by telephone. (*Id.* at ¶15; *see also id.* at pp. 15, 17).

An ARcare employee retrieved the faxes and placed them "in a box devoted to storing junk faxes." (*Id.* at ¶16). (The company alleges it received many more such faxes from Centor, but states that "the majority of junk faxes received by ARcare … are immediately thrown into the trash." (*Id.* at ¶17)).

These faxes, which ARcare has attached as Exhibits A and B to its proposed amended complaint (*id.* at pp. 14–17), lack the header that ordinarily appears at the

top of a faxed document. *See* 47 U.S.C. § 227(d)(1) (making it a TCPA violation for a sender of a fax to omit "the telephone number of the sending machine" and "the date and time" the fax was sent). According to ARcare, however, Centor had "the ability to prevent such fax header information from being included on a facsimile" and decided to omit that information from the faxes at issue. (Doc. 15–1 at ¶18).

One of the faxes that ARcare received indicates that it was "provided by McKesson Manufacturer Marketing, a division of McKesson Specialty Health Pharmaceutical & Biotech Solutions." (*Id.* at ¶19). McKesson's website states that it offers companies like Centor "the ability to leverage our customer base of thousands of pharmacies, hospitals and speciality-care providers nationwide to help expand your market opportunities." (*Id.*) (internal quotation marks omitted).

From this ARcare concludes that Centor likely "hired McKesson … to send the faxes attached as Exhibit[s] A and B … to McKesson's customer base of thousands of pharmacies, which included ARcare." (*Id.* at ¶20) (internal quotation marks omitted).

### Standard of Review

A complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

■ To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

■ I may consider "the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### Discussion

#### A. Plausibility

■ Defendants argue that ARcare's proposed amended complaint still fails to state a plausible claim against them.

They contend that ARcare's failure to identify the specific date it received the faxes and the number from which the faxes originated is fatal to its claim. (Doc. 17 at 8–10). Defendants also emphasize that the faxes ARcare allegedly received lack a header, which, in defendants' view, severs any connection between them and the faxes. (*Id.* at 8–9).

At their core, however, these are just arguments that ARcare has not proved its TCPA claim. As such, they are unconvincing at the motion-to-dismiss stage, and I reject them.

ARcare has alleged that it received at least two unsolicited faxes advertising Centor's products. (Doc. 15–1 at ¶14). These faxes invited the recipient to contact Centor by phone or email and listed the company's website. (*Id.* at pp. 15, 17).

Furthermore, one of the faxes indicates that a marketing company—McKesson Manufacturer Marketing—is responsible for ensuring that recipients continue to receive or no longer receive faxes advertising Centor's products. (*Id.* at p. 17). From the complaint, moreover, it appears that McKesson may be a "fax blaster," an entity that "procures a wide range of clients

and faxes those clients' advertisements to thousands of fax numbers." *Comprehensive Health Care Sys. of Palm Beaches, Inc. v. Vitaminerals VM/Orthopedics, Ltd.*, 2017 WL 27263, *4 n.6 (N.D. Ohio) (Burke, J.).

The upshot of all this, as ARcare plausibly alleges, is that Centor likely hired McKesson to advertise its products via fax. That, in any event, is certainly a more plausible scenario than what the defendants' arguments in opposition tend to imply: namely, that some unknown third party, without Centor's knowledge or consent, is expending time and resources—not to mention risking significant legal liability—to get faxes that advertise Centor's goods into the hands of ARcare and other potential customers.

That ARcare has not identified exactly when it received the fax, or at which of its offices the fax arrived, is immaterial.

For one thing, ARcare contends that it received the faxes during a three-month window this year. (Doc. 15–1 at ¶¶14, 16). These faxes are, moreover, at least in ARcare's view, "junk," and ARcare employees routinely throw all but a very small sample of the faxes into the trash as soon as they come in. (*Id.* at ¶16). ARcare's failure to allege the exact date of receipt is therefore unsurprising and in no way detracts from the plausibility of its claim.

For another, which of ARcare's thirty-plus offices actually received the fax has no bearing on the plausibility of the claim. Indeed, ARcare has identified the telephone number of the fax machine that received the faxes (*Id.* at ¶14), which is arguably a more precise marker of where the defendants' faxes ultimately ended up.

Finally, the missing header does not absolutely sever the link between defendants and the faxes, as Centor erroneously claims.

This is because ARcare has plausibly alleged why the header is missing: either Centor or McKesson deliberately omitted it. (*Id.* at ¶18). As ARcare correctly notes, omitting the header, which in the ordinary case will identify who sent the fax, is itself a TCPA violation. 47 U.S.C. § 227(b)(1). If, then, Centor or McKesson deliberately omitted the header, thereby denying ARcare the ability to identify the sender, it would be improper to dismiss ARcare's complaint for failing to provide that information.

For these reasons, I hold that ARcare's complaint states a plausible TCPA claim.

## B. Involvement of Centor U.S. Holdings

I also reject defendants' argument that the complaint is insufficient to show that Centor U.S. Holdings, as opposed to Centor, Inc., was responsible for any TCPA violation.

According to the amended complaint, Centor U.S. Holdings "directs, controls, and/or supervises Defendant Centor, Inc.'s actions, including its business activities." (Doc. 15–1 at ¶11). In *Vinny's Landscaping, Inc. v. United Auto Credit Corp.*, 207 F.Supp.3d 746, 753 (E.D. Mich. 2016), the court held that an essentially identical allegation raised a plausible inference that two holding companies—and not just their subsidiary whose product appeared on an unwanted fax—had also violated the TCPA. As the court explained:

Absent from Defendants' brief is any argument as to why the allegations above fail to raise the plausible inference that the Fax was sent **on behalf of** [the holding-company defendants]. While it is true that the fax itself fails to reference either [of the holding-company defendants], the allegations above allow the court to infer that the fax could have been sent at the holding company defen-

dants' direction since these defendants allegedly manage or lead/direct/coordinate [the subsidiary's] operations. Plaintiff has also alleged that [the holding-company defendants] benefit and profit from the sale of the service advertised in the Fax. This allegation entitles Plaintiff to the inference that the bankruptcy program advertised could plausibly belong to the holding company defendants as well as [its subsidiary].

*Id.* at 753 (emphasis in original).

That analysis applies with equal force in this case. Although the faxes at issue here do not mention Centor U.S. Holdings, it is still plausible to think that, given ARcare's allegation that the holding company controls and directs its subsidiary's business operations, the faxes came at the behest of the holding company.

Because ARcare's allegations regarding the relationship between Centor U.S. Holdings and Centor, Inc., cure the deficiencies of the original complaint on this score, *see ARcare, supra,* 2017 WL 3621809 at *4, ARcare's claim may proceed against both defendants.

### Conclusion

It is, therefore,

ORDERED THAT:

1. The motion for leave to file an amended complaint (Doc. 15) be, and the same hereby is granted; and

2. The clerk of court shall forthwith set this case for a telephonic status/scheduling conference.

So ordered.