NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0485n.06

Case No. 24-6054

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Oct 21, 2025

KELLY L. STEPHENS, Clerk

|  |  |
|---|---|
| MATTHEW MOSSER, | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| CRAMER-KRASSELT COMPANY; CKYP, LLC, | ) |
| Defendant-Appellees. | ) |
| | ) O P I N I O N |
| | ) |

Before: COLE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

COLE, Circuit Judge. For two decades, Matthew Mosser served as an independent sales consultant to Cramer-Krasselt Company and CKYP, LLC (collectively, "Cramer"), earning commission on fees from clients he procured for Cramer. But this relationship frayed after Cramer declined to pay Mosser a hefty commission for portions of his work with the Cintas Corporation. Mosser sued Cramer, asserting one count of unjust enrichment pursuant to Kentucky common law and invoking diversity jurisdiction as the basis for federal subject-matter jurisdiction. Cramer moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that the parties' express contract governed the terms of their business relationship and therefore barred an unjust enrichment claim. In the alternative, Cramer sought to move the case to Illinois under the forum non conveniens doctrine. The district court granted Cramer's motion to dismiss and denied Mosser's subsequent motion to alter or amend the judgment. We affirm.

I.

"We take the facts only from the complaint, accepting them as true as we must do in reviewing a Rule 12(b)(6) motion." *Siefert v. Hamilton County*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed. R. Civ. P. 12(b)(6)).  Matthew Mosser is a Kentucky citizen, while Cramer is a corporation incorporated in Delaware with its principal place of business in Illinois.  In 2003, Cramer hired Mosser as a commission-based consultant to seek new marketing and advertising clients.  Initially, Cramer paid Mosser approximately three percent of each client's gross spend— the total amount spent by the client before any deductions.  In 2009, Mosser's commission compensation instead became 20 percent of the management fee that Cramer charged its clients for digital advertising services that utilized search engine marketing services.  In January 2019, the parties cemented this commission structure in a year-long Independent Sales Consultant Agreement ("the Agreement").

While consulting for Cramer, Mosser contends that he "cultivated a personal and professional relationship with Cintas," which became an integral client.  As evidence of his contributions, Mosser underscores Cintas's 2017 decision to hire Cramer for additional work, including Cintas's "Ready for the Workday" media campaign, which he claims generated over $12 million in revenue for Cramer.  But instead of paying his 20 percent commission fee for the Cintas media campaign, Mosser asserts that Cramer repeatedly "stonewall[ed]" him, before ultimately "claim[ing] they did not owe Mosser any commission . . . because there was no written agreement providing such."  (Compl., R. 1, PageID 6.)  This sharply contrasted with digital advertising and

marketing search engine accounts for Cintas and other clients, wherein Cramer continued to pay Mosser a 20 percent commission until May 2023.

In 2024, Mosser sued Cramer, asserting a claim for unjust enrichment under Kentucky law. Cramer moved to dismiss, contending that Mosser's work was sufficiently covered by the Agreement such that he must bring any claims as a breach of contract rather than unjust enrichment. Alternatively, if the court did not dismiss Mosser's complaint, Cramer argued that the Agreement's choice of law and forum selection clauses favored Illinois, rather than Kentucky, as the applicable law and proper venue for this matter. Cramer attached the Agreement and its four extensions. In response, Mosser largely reiterated his original arguments but cited new documents not attached to his complaint. This included an email to Mosser from Ante Lisnic, Cramer's Executive Vice President and Chief Financial Officer. Mosser argues that this email, described further below, shows that his work with the Cintas media campaign was outside the scope of the Agreement.

The district court granted Cramer's motion to dismiss, concluding that (1) the Agreement and its extensions applied to the parties' dispute and (2) Mosser's extrinsic evidence could not establish the parties' intent. Mosser moved to alter or amend the judgment, which the court denied. Mosser timely appealed.

## II.

We review a district court's dismissal under Rule 12(b)(6) de novo. *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008). "District courts may grant a motion under Rule 12(b)(6) only if a complaint does not state a 'plausible' claim." *VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 399 (6th Cir. 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss, we construe the

complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett*, 528 F.3d at 430 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

Both Cramer and Mosser attached additional documents to their respective motion to dismiss and response—namely, the Agreement and its extensions, along with emails between Mosser and Lisnic. Ordinarily, when evaluating a motion to dismiss, courts may consider only the factual allegations contained in the pleadings; otherwise, the motion must be converted into one for summary judgment under Rule 56. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483–84 (6th Cir. 2020); *see also* Fed. R. Civ. P. 12(d). There are some exceptions, however. Courts may consider (1) documents attached to the complaint, (2) documents attached to "the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," and (3) public records. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (quoting *Bassett*, 528 F.3d at 430). Accordingly, since the Agreement and its extensions are "central to the claims contained" within Mosser's complaint, we will consider their contents under Rule 12(b)(6). *Rondigo*, 641 F.3d at 681.

III.

Recall that in the district court, Mosser contended that Kentucky law applies and Cramer pointed to Illinois law while also arguing that it prevailed under Kentucky law. On appeal, both parties argue their positions under both states' laws. We will follow their lead and consider Mosser's arguments under both Kentucky and Illinois law because there are no material differences—Mosser's arguments fail under either.

First, Mosser contends that the district court erred in dismissing his case for failure to state an unjust enrichment claim. In Kentucky, a plaintiff alleging unjust enrichment must demonstrate

three elements: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *KSA Enters., Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 467 (6th Cir. 2019) (quoting *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009)). Similarly, to bring a claim of unjust enrichment in Illinois, a plaintiff "must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (1989)).

More specifically, Mosser argues that (1) at his expense, he benefitted Cramer by acquiring the Cintas media campaign business; (2) Cramer profited by receiving at least $12 million in sales from the media campaign; and (3) it would be inequitable for Cramer to retain this benefit without paying Mosser. In support of this argument, Mosser points to both Kentucky and Illinois caselaw to demonstrate his plausible chance of recovery under either state's unjust enrichment test. Moreover, Mosser maintains that "when an express contract does not fully address a subject, a court of equity may impose an equitable remedy to further the ends of justice in the form of unjust enrichment." (Reply Br. 4–5.)

But Mosser's claim of unjust enrichment fails because the Agreement addressed all his compensation. The initial agreement between the parties, dated June 20, 2003, provided Mosser with a tiered commission fee structure topping out at 4.5 percent. The Agreement, effective January 1, 2019, specified that "[Mosser] shall be entitled to receive commission equal to 20% of the net revenue generated from the Clients Local Search Business, during the Term of this

Agreement." (Mot. to Dismiss, R. 6-2, PageID 42.)[1] The Agreement's compensation clauses continued, Mosser "shall not be entitled to revenue with respect to other business from Clients, whether directly through [Cramer] or [its] affiliates" and "[t]he compensation set out above shall be [Mosser's] sole compensation under this Agreement." (*Id*. at PageID 43.) The Agreement also provided that "[Mosser] agrees to perform such customer services related services with respect to Clients as [Cramer] may reasonably require." (*Id.*) And importantly, the Agreement's final clause specified that it "constitutes the entire understanding between the Parties concerning its subject matter and supersedes all prior discussions, agreements and representations, whether oral or written and whether or not executed by [Cramer] and [Mosser], including but not limited to the C-K Employment Agreement between [Cramer] and [Mosser] dated June 20, 2003." (*Id*. at PageID 44.)

The late 2019 extension changed only Mosser's commission percentage. The 2020 extension did not change any terms. The 2021 extension established a commission percentage for the Cintas search engine account and a different commission percentage for all other clients' search engine accounts; stated that "any incremental project work or revenue outside the [Cintas search engine account] are not part of the commission and will be negotiated separately;" and repeated that Mosser "shall not be entitled to revenue with respect to other business from Clients, whether directly through [Cramer] or [its] affiliates." (Mot. to Dismiss, R. 6-3, PageID 50.) The 2022 extension essentially mirrors the 2021 extension.

Given this contractual text, we hold that the Agreement relates to the subject matter of Mosser's commission and precludes a claim of unjust enrichment on the same subject. We have previously explained that "[b]ecause unjust enrichment is a quasi-contractual remedy . . . a plaintiff

---

[1] Exhibit A to the Agreement defined "Clients" and included Cintas. (Mot. to Dismiss, R. 6-2, PageID 42, 46.)

cannot recover for unjust enrichment when an express contract governs the subject matter of the litigation." *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 487 (6th Cir. 2014). Notwithstanding Mosser's arguments that courts may deliver an equitable remedy when an express contract exists, under Kentucky law, "the doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Nash-Finch Co. v. Casey's Foods, Inc.*, 762 F. App'x 218, 225 (6th Cir. 2018) (quoting *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977)). Instead, where an express contract exists, parties must resolve disputes through a breach of contract claim. *Nash-Finch*, 762 F. App'x at 225. The same is true under Illinois law. *See Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324–25 (7th Cir. 2021) ("A claim for unjust enrichment is based upon an implied contract; where there is a specific contract that governs the relationship of the parties, the doctrine has no application." (quoting *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (citation modified))). But Mosser notably failed to allege a breach-of-contract claim in his complaint and did not amend, or move to amend, his complaint to plead a breach-of-contract claim in the alternative.

Nevertheless, Mosser contends that the Agreement does not preclude his unjust enrichment claim because it did not cover his additional media campaign work with Cintas. (*See, e.g.*, Reply Br. 6 ("The Cintas Media Campaign business that Mr. Mosser brought to Cramer . . . was not a part of Cramer's Local Search business. There was no written agreement governing the Cintas Media Campaign business that Mr. Mosser brought to Cramer.").) But since a valid contract governs the subject matter of Mosser's compensation, equitable relief cannot rewrite or circumvent its terms, and Mosser's unjust enrichment claim must fail.

Next, Mosser asserts that the district court committed reversible error by not properly considering an extrinsic document—the email from Lisnic—because the email contains an

admission by Cramer that the "parties' [] Agreement does not encompass the Cintas Media Account business." (Appellant Br. 2.) But as the Agreement and its extensions made clear, all other communications from Cramer's chief officers are "supersede[d]" by its terms. (Mot. to Dismiss, R. 6-2, PageID 44.) Given this unambiguous language, neither Kentucky nor Illinois law permits us to look beyond the Agreement and consider extrinsic evidence. *See Harper v. The Oversight Comm. (In re Conco, Inc.*), 855 F.3d 703, 711 (6th Cir. 2017) ("Absent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence.") (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)); *see also Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005) ("Illinois adheres to a four corners rule of contract interpretation, which provides that an agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and . . . [i]t is not to be changed by extrinsic evidence.") (citation modified)).

Moreover, even if we considered Lisnic's email, it does not support Mosser's argument. Lisnic wrote,

> The current agreement in place,[2] which supersedes all previous agreements, clearly states that you would be compensated for work related only to Cintas Local Search. There is no agreement in place[] or email where both parties mutually agree on the allowance of commissions related to the Cintas Ready for the Workday campaign.

(Reply in Opp'n, R. 12-1, PageID 81.)

This email affirms that Mosser was to be compensated under the Agreement for only his search engine work and not separately for other revenue streams, including the media campaign. Again, this is reinforced by the Agreement's explicit terms, which clearly stated that Mosser "shall not be entitled to revenue with respect to other business from Clients, whether directly through

---

[2] Lisnic's email is dated May 31, 2023, and the 2022 extension extended the Agreement until May 31, 2023.

[Cramer] or [its] affiliates]." (Mot. to Dismiss, R. 6-2, PageID 43.) As such, the district court's decision not to consider Lisnic's email was proper.

IV.

For the foregoing reasons, we affirm.