RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0192p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

AIMEE STURGILL,

               *Plaintiff-Appellant*,

    *v.*

AMERICAN RED CROSS,

               *Defendant-Appellee*.

No. 24-1011

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cv-11837—Paul D. Borman, District Judge.

Argued: July 24, 2024

Decided and Filed: August 21, 2024

Before: GILMAN, GRIFFIN, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Colin H. Wilkin, HURWITZ LAW, PLLC, Ann Arbor, Michigan, for Appellant. Constantinos G. Panagopoulos, BALLARD SPAHR LLP, Washington, D.C., for Appellee. **ON BRIEF:** Colin H. Wilkin, HURWITZ LAW, PLLC, Ann Arbor, Michigan, for Appellant. Constantinos G. Panagopoulos, Sara Rangiah, BALLARD SPAHR LLP, Washington, D.C., for Appellee.

───────────────

## OPINION

───────────────

GRIFFIN, Circuit Judge.

Citing a conflict with her religious beliefs, plaintiff Aimee Sturgill objected to defendant American Red Cross's mandate that she become vaccinated against COVID-19. The Red Cross

denied her request for an accommodation, concluding that she was medically—not religiously—opposed to the vaccine and then terminated her employment.  Sturgill alleges the Red Cross's decision reflects a failure to accommodate her religious beliefs, in violation of Title VII of the Civil Rights Act of 1964.  The district court dismissed her complaint under Federal Rule of Civil Procedure 12(b)(6), holding that she did not plausibly allege a prima facie case sufficient to support a failure-to-accommodate claim.  Elevating the pleading standard to require a prima facie case was erroneous.  However, the district court correctly held that Sturgill did not separately set forth a disparate-treatment claim.  We therefore affirm in part, reverse in part, and remand for further proceedings.

I.

A.

In the motion-to-dismiss posture, we take as true the facts alleged in plaintiff's complaint. *Mynatt v. United States*, 45 F.4th 889, 893 (6th Cir. 2022).  The relevant facts are set forth in the operative complaint and in the documents attached to the Red Cross's motion to dismiss that Sturgill refers to in her complaint and that are central to her claims—Sturgill's requests for accommodation and the Red Cross's denials.  *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

During the COVID-19 pandemic, the Red Cross mandated that certain employees become vaccinated against COVID-19.  Sturgill was a registered nurse for the Red Cross and subject to the vaccination requirement.  She is a devout Christian who makes "daily decisions, including those regarding her vaccination status and other medical decisions, through prayer and by reading scripture."  After doing so in response to the Red Cross's vaccine mandate, she concluded that complying with that employment requirement would clash with her religious beliefs.

So Sturgill sent a detailed letter to the Red Cross seeking a religious exemption.  That letter informed the Red Cross that her "sincerely held religious belief for [her] accommodation stems from the biblical teaching of [her] religious spiritual leader Jesus Christ," and it quoted several different scriptures—including 1 Corinthians 6:19–20; 1 Corinthians 3:17;

1 Timothy 4:8; 2 Timothy 1:7; and Romans 2:14–15—supporting her belief that she is the "steward[] of God's blessing of life" and thus was required to "tak[e] the utmost care for [her] body . . . to continue to honor God and the temple he gave [her]." She also believed that "[t]he ingredients in the vaccine[] can cause serious harm and even death to [her] body," which was "a VERY important concern" given her "blood clotting disorder."

The Red Cross denied Sturgill's request. In its view, she: (1) "failed to identify a religious belief, practice, or observance that prohibits [her] from being vaccinated against COVID-19"; (2) did "not explain whether [her] belief, practice, or observance prohibits all potentially harmful ingredients from being ingested, and if not, why not"; (3) relied "on inaccurate factual statements to form the basis of [her] religious belief, specifically, [her] suggestion that the vaccine is not safe"; (4) "stated that [her] religious beliefs prevent [her] from receiving the COVID-19 vaccine" even though she "received a three-dose series of Hepatitis B vaccine"; and (5) cited "factors that are not appropriate bases for a religious accommodation request, such as [her] blood clotting disorder, which can be asserted in a request for a medical accommodation." It then gave Sturgill a chance to seek reconsideration by submitting additional information.

Plaintiff did just that, again detailing her request for an accommodation on religious grounds. That appeal letter reiterated to the Red Cross that she makes decisions "with a heart of faith and trust[s] that such decisions should always rest between the Christian ([Sturgill]) and [her] Maker." And that decision-making process led her to conclude that because "[her] body is the temple of the Holy Spirit, . . . taking the COVID-19 vaccine[] would be defiling [her] body . . . with unwanted intrusions" and would "go against [her] conscience." Sturgill also explained why her opposition to the COVID-19 vaccine here was not inconsistent with her having previously received other vaccines: "As a believer who may have had childhood vaccines or even a Hepatitis B vaccine many years ago, that does not contradict or negate the veracity of my individual belief and my desire to abstain from the COVID-19 vaccine. My individual views continue to be modified over time as I grow in spiritual maturity and knowledge of God."

After considering Sturgill's additional information, the Red Cross denied her appeal. It concluded that Sturgill's religious beliefs regarding the COVID-19 vaccine were not sincerely

held because she failed to identify a specific "religious belief, practice[,] or observance [that] deems the COVID-[19] vaccine[] defiling." The Red Cross then terminated Sturgill's employment.

## B.

Sturgill's operative complaint asserts one claim under Title VII—that the Red Cross failed to reasonably accommodate her sincerely held religious beliefs when it fired her for refusing to comply with its vaccine mandate. The Red Cross moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). While that motion remained pending, the parties continued (and fought over) discovery, and the Red Cross moved for summary judgment under Federal Rule of Civil Procedure 56. The district court then granted defendant's motion to dismiss, without mentioning the pending Rule 56 motion.

Two aspects of the district court's opinion are relevant to this appeal. First, the district court held that plaintiff's complaint did not adequately plead facts establishing the prima facie elements of a Title VII religious-accommodation claim—specifically, that she did not hold a sincere religious belief that conflicts with an employment requirement. Second, it concluded that she pleaded only a cause of action for failure to accommodate and not a standalone disparate-treatment claim. On appeal, plaintiff challenges both holdings.

## II.

We first consider whether Sturgill plausibly alleged that the Red Cross violated Title VII's religious-accommodation requirements. "Plainly she pled such facts." *Lucky v. Landmark Med. of Mich., P.C.*, 103 F.4th 1241, 1243 (6th Cir. 2024).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). That means the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (internal quotation marks omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). If a plaintiff does not "nudge[] the[] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Twombly*, 550 U.S. at 570. When considering a motion to dismiss, we must accept as true all factual allegations, but need not accept any legal conclusions. *Napolitano*, 648 F.3d at 369. And we must take care to read the complaint's allegations "as a whole." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011). We review de novo a district court's grant of a motion to dismiss. *Lipman v. Budish*, 974 F.3d 726, 740 (6th Cir. 2020).

Title VII prohibits an employer from "discharg[ing] any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). "The heart of the failure-to-accommodate claim is that an employer discharges (or otherwise discriminates against) an employee for failing a job-related requirement instead of abiding by its 'statutory obligation to make reasonable accommodation for the religious observances' of its employees." *Savel v. MetroHealth Sys.*, 96 F.4th 932, 943–44 (6th Cir. 2024) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, 97 (1977)).

The central question "is whether [Sturgill] pled facts supporting an inference that her refusal to be vaccinated for Covid was an 'aspect' of her 'religious observance' or 'practice' or 'belief.'" *Lucky*, 103 F.4th at 1243 (citation omitted). Sturgill alleged both in her complaint and in response to the Red Cross's vaccination requirement that, as a Christian, she makes "daily decisions . . . through prayer and by reading scripture." She "begin[s her] decision-making with hearts of faith," and honors the Bible's commands that our "bodies are temples of the Holy Spirit," that "[i]f anyone destroys God's temple, God will destroy him," and that Christians must "take the utmost care of our own bodies." In her words: "My body is the temple of the Holy Spirit, and taking the COVID-19 vaccine, would be defiling my body." Her operative complaint also sets forth her concern that the ingredients contained in the COVID-19 vaccine "can cause

serious harm and even death to [her] body." Simply, her complaint plausibly alleges that she prayed about whether to take the COVID-19 vaccine and concluded that not taking it would "honor God and the temple he gave [her]." Thus, as stated in the complaint, Sturgill's "sincerely held religious beliefs prevent her from receiving the COVID-19 vaccination." As in *Lucky*, these "allegations were almost self-evidently enough to establish, at the pleadings stage, that her refusal to receive the vaccine was an 'aspect' of her religious observance or belief." *Id.*; *see also Savel*, 96 F.4th at 944.

Relying in part on the district court's opinion in *Lucky* that we have since reversed, the district court held that plaintiff "has not pled that she holds a sincere religious belief that conflicts with" defendant's employment requirement that she become vaccinated against COVID-19. *See Lucky v. Landmark Med. of Mich., P.C.*, 2023 WL 7095085 (E.D. Mich. Oct. 26, 2023). That is a holding borne out not of *Twombly*'s and *Iqbal*'s plausibility requirement but from the prima facie evidentiary standard applicable only when evaluating motions for summary judgment under Rule 56.[1] Under that traditional burden-shifting approach, the employee must first prove a prima facie case of religious discrimination by establishing three elements: (1) the employee holds a sincere religious belief that conflicts with an employment requirement; (2) the employee informed the employer about that conflict; and (3) the employer took an adverse employment action against the employee for failing to comply with the conflicting employment requirement. *See Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 516 (6th Cir. 2002). Upon such a showing, the burden shifts to the employer to demonstrate "that it could not reasonably accommodate the employee without undue hardship." *Id.*

A prima facie case, however, "is an evidentiary standard, not a pleading requirement" and is one that may "not be transposed into a rigid pleading standard for discrimination cases."

---

[1]Plaintiff asserts we need not address the district court's prima-facie-based approach, arguing additionally that her complaint set forth direct evidence of discrimination—i.e., "proof that, if believed, compels the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) (internal quotation marks omitted)—because the Red Cross "refused to engage in the interactive process and told Plaintiff that she was not religious because 'our records reflect that you have received a three-dose series of Hepatitis B vaccine.'" But she did not make this argument below, and regardless, the issue before us is not whether plaintiff established direct (or indirect) evidence of discrimination sufficient to withstand a motion for summary judgment. Rather, it is whether she plausibly alleged a violation of her Title VII rights to survive a motion to dismiss.

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510, 512 (2002). *Twombly*'s and *Iqbal*'s adoption of the plausible-pleading standard did not disturb *Swierkiewicz*'s holding. *See Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). So as we have recently reiterated in other cases involving religious objections to an employer's COVID-19 vaccine mandate, "[a] plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in their complaint." *Savel*, 96 F.4th at 943; *see also Lucky*, 103 F.4th at 1244. To be sure, the complaints in *Savel* and *Lucky* did not have extensive documents attached that may be considered at this stage like we have here, as the Red Cross noted at oral argument; but that distinction does not make a difference given what those documents set forth. The district court's element-by-element examination of whether plaintiff established a prima facie case for failure to accommodate was therefore erroneous.

So too was its disregard of Sturgill's stated religious reason for seeking an accommodation because the request was, in the district court's view, "medical in nature." Such reasoning is contrary to our First Amendment jurisprudence, which commands that courts may not question the veracity of one's religious beliefs. *See Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."); *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981) ("[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."). Nor was she required, as urged by the Red Cross, to "cite[] to any tenet of the Lutheran church that opposes western medicine in general or the COVID vaccine specifically." *See Lucky*, 103 F.4th at 1243 ("Nor did the district court have any basis for its insistence that Lucky explain how her religion has a specific tenet or principle that does not permit her to be vaccinated." (internal quotation marks omitted)). The same is just as applicable to the district court's finding that Sturgill failed to address whether her prior receipt of the Hepatitis B vaccine aligned with her religious beliefs.[2] *See id.*; *see also Thomas*, 450 U.S. at 714

[2]In any event, she did provide the Red Cross with such an explanation: "As a believer who may have had childhood vaccines or even a Hepatitis B vaccine many years ago, that does not contradict or negate the veracity of my individual belief and my desire to abstain from the Covid-19 vaccine. My individual views continue to be modified over time as I grow in spiritual maturity and knowledge of God."

(["R]eligious beliefs need not be . . . consistent . . . in order to merit First Amendment protection.").

But even if the district court's reasoning can be interpreted as honoring Sturgill's faith, the district court's parsing of plaintiff's complaint to conclude her objection was "clearly medical" and not religious failed to read and accept her complaint "as a whole." *See Matrixx*, 563 U.S. at 47. The district court, for example, cast off plaintiff's many religious-in-nature allegations as "legal conclusion[s] couched as . . . factual allegation[s]." True, as the district court noted, parts of her complaint do link her refusal to take the COVID-19 vaccine to her concern about its safety, which drove defendant to reject her accommodation request. Yet those apprehensions (regardless of validity) must be understood within the broader context of the complaint, which makes clear that what forms Sturgill's protective view of her body are the tenets of her Christian faith. That faith instructs her to treat her body as a temple and not do anything that would "defile" it. And one plausible way to read her complaint is that by placing into her body a substance that she believes can cause injury, she would not honor God's command to the contrary. She thus need not, as the Red Cross protests, "provide a reason as to whether her aversion to the COVID-19 vaccine derives from a religious belief about vaccines in general, or whether her religion imposes a limitation solely to the COVID-19 vaccine."

In sum, that there may be both religious and secular reasons for an act does not elevate the latter over the former, especially at the pleading stage. *See Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024) (explaining in a COVID-19 vaccine religious exemption case that "[a]s EEOC Guidance says, 'overlap between a religious and [a secular] view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system'" (quoting EEOC Compliance Manual § 12-I(A)(1) (Jan. 15, 2021))); *Callahan v. Woods*, 658 F.2d 679, 684 (9th Cir. 1981) ("[A] coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one."). The Red Cross's proffered "obvious alternative explanation" for Sturgill's accommodation request—that it was rooted in medicine, not religion—is one we "cannot simply credit" at this stage. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 195 (2024) (citation omitted).

On that point, the Red Cross asserts that how it responded to Sturgill shows the balance that employers must consider when evaluating requests for reasonable accommodations that have blended medical and religious foundations. To what end is an employer to go, the Red Cross asks, if an employee claims she cannot perform work on a particular day based on environmental concerns that could "harm her body?" That is a fair concern. But the procedural posture and specific facts alleged here mean that we need not define the outer limits of Title VII's scope on this point. Rather, we leave it to the parties to factually probe plaintiff's claims and defendant's actions during discovery, to the district court to test those facts at summary judgment, and then ultimately (if her claim survives summary judgment) to a jury to resolve those facts at trial.

For these reasons, Sturgill's complaint plausibly alleged that the Red Cross failed to accommodate her religious objection to its COVID-19 vaccine mandate, and the district court erred in holding to the contrary.

III.

The other issue on appeal is whether plaintiff's complaint set forth a religious-discrimination claim based on disparate treatment in addition to her failure-to-accommodate claim. We agree with the district court that Sturgill's complaint sets forth only a claim for failure to accommodate.

We have long differentiated between "failure to accommodate" and "disparate treatment" claims. *See Reed v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 569 F.3d 576, 579 (6th Cir. 2009) ("There are two basic types of religious discrimination claims that an individual may bring . . . under Title VII: disparate treatment claims and religious accommodation claims."); *see also Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 627–28 (6th Cir. 2000) (contrasting between the two claims). *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774–75 (2015), does not require revisiting this approach. *Cf. Savel*, 96 F.4th at 943 n.4.

There, the Court considered, among other things, whether "a claim based on a failure to accommodate an applicant's religious practice must be raised as a disparate-impact claim," or as "a disparate-treatment claim," and it concluded that "religious practice is one of the protected

characteristics that cannot be accorded disparate treatment and must be accommodated." *Abercrombie*, 575 U.S. at 774–75. This is because Congress defined "religion" broader than just "belief" "so that discriminating against a particular religious practice would not be disparate treatment though it might have disparate impact." *Id.* at 774 (emphasis omitted). In other words, a failure-to-accommodate claim is a type of disparate-treatment claim.

In plaintiff's view, *Abercrombie* means that her "failure to accommodate claim encompasses a disparate treatment claim, which opens the door for" her to also assert a disparate-treatment claim. We cannot agree. *Abercrombie* provides that there are "only two categories" of Title VII discrimination claims, "disparate treatment and disparate impact," and it then "sort[s] religious accommodation claims under the disparate treatment umbrella." *Savel*, 96 F.4th at 943 n.4. Put differently, our pre-*Abercrombie* "sorting" of the two types of disparate treatment—failure to accommodate and general disparate treatment—survived *Abercrombie*.

If plaintiff wanted to plead a disparate-treatment claim independent of her accommodation claim, she could have done so. *See, e.g.*, *id.* at 943–45 (analyzing claims for failure to accommodate and disparate treatment for a COVID-19 vaccine policy separately). Yet nothing in her complaint can be plausibly read to put the Red Cross on notice that she claimed it treated her differently on account of her religious beliefs separate from her failure-to-accommodate claim. She also could have sought leave to amend her complaint in response to defendant's motion to dismiss, yet she did not. And to the extent that she relies on her briefing in response to that motion to support such an amendment, that response was not the vehicle to do so. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).

The district court therefore correctly held that plaintiff's complaint did not set forth a standalone disparate-treatment claim.

IV.

For these reasons, we affirm in part, reverse in part, and remand for further proceedings.