NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0078n.06

No. 23-3936

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| LEAH PRIDA, | ) | |
|     Plaintiff-Appellant, | ) ) ) | **FILED**<br>Feb 11, 2025<br>KELLY L. STEPHENS, Clerk |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| OPTION CARE ENTERPRISES, INC.; CLINICAL SPECIALTIES, INC., | ) ) ) | |
|     Defendants-Appellees. | ) ) | OPINION |

Before: STRANCH, THAPAR, and MURPHY, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Leah Prida worked at Option Care Enterprises until March 9, 2022, when she was terminated for not complying with the company's Covid vaccination or testing policy. Prida alleges that Option Care violated Title VII of the Civil Rights Act and Ohio state law because her termination constituted religious discrimination, failure to accommodate, and retaliation. The district court granted Option Care's motion to dismiss. In light of the governing Rule 12(b)(6) standard of review, we **REVERSE**.

## I. BACKGROUND

We construe the facts as alleged in Prida's Amended Complaint in the light most favorable to Prida, according to our standard of review at this stage. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The parties in this case also refer to a few outside-the-complaint exhibits. Because neither party objects to the use of these exhibits at this stage, we

assume that we may consider them on the ground that "they are referred to in the Complaint" and "central" to its claims. *Id.*

## A. Prida's Termination

Option Care Enterprises, Inc. provides direct patient care through infusion services to people with acute and chronic conditions.[1] Prida worked at Option Care for approximately 25 years, most recently in network operations in Option Care's Hudson, Ohio office. Prida was discharged from her position at Option Care in March of 2022 for refusing to comply with a weekly Covid testing requirement.

At Covid's outset in 2020, Option Care transitioned to a work-from-home model for non-essential employees. For over a year, Prida worked remotely at least half of the time and reported to a partially vacant office for the other half. In 2021, Option Care began to return employees to its offices. Prida went to the office even less in the second half of 2021, but when Prida did go to the office, she wore a mask, as required by Option Care.

In November of 2021, Option Care announced that it would be implementing a company-wide Covid vaccine or testing mandate. Employees were given notice that they had until January of 2022 to get the vaccine or seek an exemption. If employees sought a medical or religious exemption to receiving the Covid vaccine, their exemption option was to take a weekly Covid test. Option Care delayed the deadline to February due to ongoing vaccine-mandate litigation, which is not at issue here.

Prida alleges that she is a practicing Jehovah's Witness, and requested an exemption from the Covid vaccination or testing policy. In her original exemption request, Prida stated that

---

[1] Option Care does business through Clinical Specialties, Inc., for whom Prida worked. For simplicity, we refer to Prida's employer as "Option Care" throughout.

> I was raised as a Christian. I continue to follow God and the principals he laid out for us in his word. I strongly believe that vaccines and/or testing, violate his requirements set forth for us in the Bible. I sincerely believe that all human beings are made in the image of God and this concept affirms the unique value of ALL human life. Exodus 20:13 – as the 6th Commandment states, "You shall not murder". I believe that abortion is gravely wrong at any stage of a pregnancy. Since our loving Heavenly Father created us and gave us such a gift with our physical bodies I have been taught in 1 Corinthians 3:16-17 – "Do you not know that you yourselves are God's Temple and that the spirit of God dwells in you? If anyone destroys the Temple of God, God will destroy him; for the Temple of God is holy, and you are that temple". Also 1 Corinthians 6:19-20 says similar – "Do you not know that your body is the temple of the holy spirit within you, which you have from God? Also, you do not belong to yourselves, for you were bought with a price. By all means, glorify God in your body". As Christians our bodies belong to God. We are accountable to our creator by the way we care for, maintain and protect our bodies.

> \*      \*      \*

> In order to produce and manufacture these vaccines use [sic] abortion derived fetal cell lines. Partaking in such, offends me and my religious faith. I will not subject myself to testing either. The United States EPA has shown since 2016 Ethylene Oxide (EO) which is used in these PCR tests on the cotton swab is a known human carcinogen.

> This all relates to what I believe in, how I should care for and what I should do with my temple of God. I cannot in good conscience alter my God given body and will not risk the harm that may come from both the vaccines or the chemicals in the testings.

R. 12-1, Mot. to Dismiss, Exh. 1, PageID 142 (citation omitted). As an accommodation, Option Care granted Prida a religious exemption to the vaccine requirement based on this request and specified that Prida must comply with the weekly testing program.

Prida refused the weekly testing requirement. She responded to human resources' approval of her vaccine exemption and repeated her statement that "I cannot in good conscience alter my God given body 'my temple' and will not risk the harm that may come from the chemicals in the

testing." R. 12-2, Mot. to Dismiss, Exh. 2, PageID 145. In these communications, Prida again discussed her medical concerns, stating, "Not only was I raised very religious, I was also raised all natural." *Id.* at PageID 143. Prida explained her belief that the chemicals in the Covid vaccine and tests are medically harmful—leading to brain damage and chemical burns—and that the Covid vaccine causes increased transmission of Covid.

In the two weeks between Prida's explanation for refusing the testing requirement and her termination, Option Care warned Prida numerous times that she would be terminated under the policy. On February 25, her manager told her that if she did not comply with the testing requirement by March 7, Option Care would have to terminate her employment.

Prida alleges that she refused to enroll in the weekly testing program and sent human resources a 19-page affidavit—titled "Affidavit of Declination for Offer of Medical Interventions, Products, and Devices. Silence is Acquiescence; Agreement & Dishonour; This is an Actual & Constructive Legal Notice"—providing a series of citations and reasons why she believed she should not have to enroll in the testing program. R. 14-1, Pl.'s Opp., Exh. 1, PageID 192. The citations ran the gamut from quotes to the Nuremberg Code, to Bible verses, to the Health Insurance Portability and Accountability Act (HIPAA). The affidavit included the full text of Title VII, Section 703, which prohibits workplace discrimination based on religion. In another section, Prida stated that she had a "right to retain employment without discrimination . . . protected by [Title VII]." *Id.* at PageID 192, 193.

Prida alleges that she sought an arrangement to work remotely all or most of the time so she would not have to take the Covid tests, but Option Care declined and required her to come to the office on her regular schedule. Prida also claims that she offered to use a different form of testing without Ethylene Oxide. Around this time, Prida discovered that, during a leadership

meeting that discussed her requests, her manager disclosed to other Option Care managers that Prida was not vaccinated. Prida complained to Option Care that this disclosure violated her HIPAA protections.

On March 9, Option Care terminated Prida for failure to comply with the policy's weekly Covid testing requirement.

### B.     Procedural History

Before bringing this suit, Prida sought similar relief with the Equal Employment Opportunity Commission (EEOC). She filed a charge of religious discrimination against Option Care on July 28, 2022. In her charge, Prida stated that her religious beliefs prevented her from complying with the Covid vaccine and testing requirement; that she requested an exemption; that she was discharged when she failed to test; and that Option Care did not keep her vaccination status confidential. The EEOC ultimately declined to take further action and provided Prida with a notice of her right to sue on February 2, 2023.

Prida timely filed a complaint against Option Care in the Northern District of Ohio alleging that Option Care discriminated against her based on her religion, failed to accommodate her religious beliefs, and retaliated against her protected activities under Title VII, 42 U.S.C. § 2000e *et seq.*, and Ohio Revised Code § 4112. Option Care timely filed a motion to dismiss. Prida filed an Amended Complaint, which Option Care responded to by renewing its motion to dismiss, attaching Prida's email communications and affidavit opposing Option Care's Covid testing mandate. The district court dismissed Prida's Amended Complaint for failure to state a claim. The court held (1) that Prida failed to sufficiently plead facts to support an inference that her refusal to take a Covid test was an aspect of her religious beliefs and (2) that Prida did not engage in protected activities necessary to find retaliation. Prida timely appealed.

## II.   ANALYSIS

This court has appellate jurisdiction over grants of motions to dismiss under 28 U.S.C. § 1291 and reviews these dismissals de novo. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). The ordinary rules of notice pleading under Federal Rule of Civil Procedure 12(b)(6) apply to Title VII cases. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). At this stage, we read the pleading in the light most favorable to the plaintiff and accept the plaintiff's factual allegations as true, considering any exhibits in the record that are referenced or described in the pleading. *Bassett*, 528 F.3d at 430. A motion to dismiss fails if the plaintiff has alleged facts supporting a reasonable inference that the defendant is liable for the alleged misconduct. *Sturgill v. Am. Red Cross*, 114 F.4th 803, 807 (6th Cir. 2024). But the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). That is, if the facts do not support an inference of unlawful conduct, the motion to dismiss succeeds. *Id.*

### A.      Religious Discrimination and Failure to Accommodate

Title VII provides that an employer may not "discharge an individual . . . because of such individual's . . . religion," 42 U.S.C. § 2000e-2(a)(1), and requires an employer to reasonably accommodate an employee's religious practices, *id.* § 2000e(j). An employer does not have to provide an accommodation, however, if the accommodation places undue hardship on the employer's business. *Id.* The statute defines religion as "all aspects of religious observance and practice, as well as belief." *Id.*

To establish religious discrimination and subsequent failure to accommodate a religious belief, a plaintiff must allege specific facts supporting a reasonable inference that her employer took some adverse action against her based on her religion and failed to accommodate her religious

practices and beliefs. Our cases establish that a grant of a motion to dismiss is appropriate where the plaintiff failed to allege "any particulars about her religion" or that her actions were "premised on her religious beliefs," because, at this stage, the inquiry turns on the specific facts pled. *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (affirming a dismissal when the plaintiff failed to allege that she held any religious belief that influenced her actions at issue). After the Rule 12(b)(6) stage, the stringent standards for discovery and summary judgment govern, and the parties are authorized to probe plaintiff's factual allegations and defendant's actions. *Swierkiewicz*, 534 U.S. at 512-13; *see also Sturgill*, 114 F.4th at 810-11.

In two recent cases, we addressed the standard for pleading a claim of religious discrimination related to refusal to get the Covid vaccine: *Lucky v. Landmark Medical of Michigan*, 103 F.4th 1241 (6th Cir. 2024), and *Sturgill v. American Red Cross*, 114 F.4th 803 (6th Cir. 2024).[2] In those cases, we explained that courts may not "presume to determine the place of a particular belief in a religion or the plausibility of a religious claim." *Lucky*, 103 F.4th at 1244 (quoting *Employment Div. v. Smith*, 494 U.S. 872, 887 (1990)). Lucky alleged that she was a non-denominational Christian who believed her body was a temple that she could not defile with vaccines and that she had prayed and received the answer that she should not get the Covid vaccine. *Id.* at 1242. We reversed the grant of her employer's motion to dismiss, explaining that the standard for pleading a sincerely held religious belief or practice requires a plaintiff to plausibly allege that her actions were an "aspect[]" of her "religious observance and practice, as well as belief." *Id.* at 1243 (quoting *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771-72 (2015)).

---

[2] These cases were not decided until several months after the district court granted Option Care's motion to dismiss.

In *Sturgill*, we specified that the complaint is to be read as a whole in determining whether the plaintiff's actions are "part of a comprehensive religious belief system." 114 F.4th at 810 (quoting *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024)). There, quoting numerous scriptures, Sturgill requested a religious exemption to the vaccination requirement, on the basis that her sincerely held religious beliefs prevented her from getting the Covid vaccine. *Id.* at 806. Sturgill also expressed her concern that the vaccine ingredients would kill or harm her because she has a blood clotting disorder. *Id.* In reversing dismissal of her case, we reasoned that Sturgill's scientific concerns "must be understood within the broader context of the complaint." *Id.* at 810. Thus, even though Sturgill alleged both religious and secular reasons for opposing the vaccine, the secular reasons did not negate the religious reasons at the motion to dismiss stage, based on Sturgill's many "religious-in-nature allegations." *Id.*

In this case, the parties agree that Prida's Amended Complaint harbors some of the particular facts needed to plead Title VII and failure to accommodate claims. Both agree that Option Care fired Prida because she would not get the Covid vaccine or take Covid tests. The only disputed issue at the motion to dismiss stage is whether Prida pled particular facts that support a reasonable inference that she refused to take weekly Covid tests because of her religious beliefs. *See Lucky*, 103 F.4th at 1243. Prida pled in her Amended Complaint that she holds "sincere religious beliefs that prevent her from receiving either a COVID-19 vaccine or conducting weekly COVID-19 testing." R. 10, PageID 104. She also pled that she could not subject herself to the testing because Ethylene Oxide, a known carcinogen, is used on the cotton swabs in the PCR tests. Prida alleged that she could not in "good conscience" alter her "God given body" or risk the potential harm from the vaccine or the chemicals used in the testing. *Id.* at PageID 100. Prida's accommodation request demonstrates both her religious and secular objections to testing. There,

Prida stated, "I strongly believe that vaccines and/or testing, violate [God's] requirements set forth for us in the Bible."

Prida also pled facts to demonstrate that she was genuine and persistent in asserting her religious beliefs. *See Sturgill*, 114 F.4th at 806. She alleges challenging the vaccination or testing requirement three times before her discharge via her accommodation request, email appeal, and affidavit, in each citing scripture and maintaining that her religious beliefs were the basis for her refusal to adhere to the policy. Prida's persistence and consistency in these communications support an inference that her refusal to take Covid tests was indeed based on her religious beliefs. *See id.*

Prida's pled beliefs are similar to those of Lucky, who alleged the Covid vaccine would defile her "temple," and Sturgill, whose religious objections were premised on both scientific and medical concerns. *See* 103 F.4th at 1243; 114 F.4th at 810. Like Sturgill, Prida quoted numerous scriptures in her accommodation requests and, throughout her appeal of Option Care's decision, consistently asserted that her religion was a basis for her refusal to get the vaccine. *See Sturgill*, 114 F.4th at 806. Thus, Prida sufficiently pled that refusing weekly Covid testing was an aspect of her religious belief. *See id.* at 808.

The district court, whose decision predated *Sturgill* and *Lucky*, held otherwise and concluded that Prida's accommodation request was based on "largely secular beliefs" including her belief that Ethylene Oxide is toxic. R. 16, PageID 236. The district court's conclusion is one plausible way to read the facts alleged in the Complaint and may prove true as the parties engage in discovery and motion practice. But *Sturgill* clarified that, where a plaintiff pleads both religious and secular concerns, particularized allegations of religious beliefs in the complaint are sufficient at the motion to dismiss stage. 114 F.4th at 808.

The district court correctly reasoned that Title VII does not grant "a right to all plaintiffs 'fungible enough to cover anything' a plaintiff dislikes in the workplace." R. 16, PageID 233 (quoting *Ulrich v. Lancaster Gen. Health*, No. 22-cv-4945, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023) (dismissing a Title VII suit brought by an unvaccinated nurse because the nurse pled only a general aversion to harming her body)). Exploration of those concerns, however, is reserved to the discovery and summary judgment stage that will provide the opportunity to carefully scrutinize the basis of Prida's refusal to take Covid tests, including through a deposition of Prida. *See Swierkiewicz*, 534 U.S. at 512-13. At that stage, the parties can address the shifting burdens of proof applicable, including any undue hardship defense.

Based on now-governing precedent, we reverse the district court's dismissal of Prida's religious discrimination and failure to accommodate claims under Title VII and remand for further proceedings.

### B. Retaliation

Option Care argues that dismissal of Prida's retaliation claims should be affirmed on two grounds: (1) Prida's failure to exhaust her Title VII claims before the EEOC and (2) her failure to plead facts that support a reasonable inference of retaliation.

#### 1. Exhaustion

Title VII requires potential litigants to exhaust their administrative remedies by filing a discrimination charge with the EEOC and obtaining a right-to-sue letter. 42 U.S.C. §§ 2000e-5(e)-(f). If a plaintiff fails to exhaust administrative remedies, any subsequent action is subject to dismissal. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 543 (2019). By contrast, under Ohio Rev. Code § 4112, litigants do not have to exhaust their claims, so Option Care's exhaustion

argument applies only to Prida's Title VII claims. *See Harrison v. City of Akron*, 43 F. App'x 903, 905 (6th Cir. 2002).

"[B]ecause aggrieved employees—and not attorneys—usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010). Option Care argues that Prida did not exhaust her Title VII retaliation claim because she did not raise it before the EEOC. Prida did not expressly state to the EEOC that Option Care had retaliated against her, but did make factual allegations related to her future retaliation claims. *See Younis*, 610 F.3d at 362. Prida stated that she notified Option Care of her "religious belief that conflict[ed] with [Option Care's] vaccination requirement," requested an accommodation, and was discharged after Option Care had shared her vaccination status with others. R. 12-3, EEOC Charge, PageID 146. She stated, "I believe I have been discriminated against because of my religion, Jehovah's Witness, in violation of Title VII." *Id.* Prida's administrative complaint encompassed facts that could lead to a future retaliation charge, including her explanation that she had been discharged after discussing her beliefs with Option Care. *See Younis*, 610 F.3d at 362 ("[W]hen facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998))). This is reinforced by the flexible exhaustion requirements for pro se Title VII complainants, which allow a subsequent lawsuit where the complainant filed charges with factual allegations sufficiently related to the later claims. *Id.*

2.      Merits of Dismissal

Title VII prohibits retaliation against employees who "*opposed* any act or practice made unlawful by [Title VII] or . . . made a charge, testified, assisted, or *participated* in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 12203 (emphasis added). Retaliation occurs when an employee engages in protected activity about which her employer knows that leads to the employer taking adverse action against the employee. *See Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343-44 (6th Cir. 2021). Protected activity, in turn, can be either opposition or participation activity. *See id.* at 344; *Hamade v. Valiant Gov't Servs., LLC*, 807 F. App'x 546, 549 (6th Cir. 2020).

Participation activity occurs when the employee has engaged in formal proceedings under Title VII. *Hamade*, 807 F. App'x at 550. Opposition activity occurs when an employee expressly opposes her employer's practices that she reasonably believes are unlawful under Title VII. *Jackson*, 999 F.3d at 344-45. Opposition activity also includes complaining that the employer's failure to accommodate is unlawful. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 644-45 (6th Cir. 2015). The complaint of unlawful activity need not be clear or precise, but instead can be plain allegations of an employee's plan to "respond[] with charges" or "[b]ring a lawsuit." *Id.* at 645-46 (finding protected activity when an employee put the employer on notice that he believed the employer's conduct was illegal). By contrast, "a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (finding no protected activity when an employee complained about his employer's position on his managerial style).

As to causation, the complainant must plead facts to support a reasonable inference that there was a causal connection between her protected activity and the adverse employment action taken against her. *See Jackson*, 999 F.3d at 348-49. Circumstantial allegations such as temporal proximity of the protected activity and adverse action can be sufficient to support a plausible allegation of causation. *See id.* at 349.

To successfully plead Title VII retaliation, then, the plaintiff must plead facts supporting a reasonable inference that the employer took adverse employment action against her because she engaged in protected activity. *See Sturgill*, 114 F.4th at 807. In Prida's case, the parties agree that Option Care took adverse employment action by firing Prida. The question is whether Prida has alleged facts supporting the reasonable inference that she engaged in protected activity that led to her discharge. *See Lucky*, 103 F.4th at 1243.

Prida's Amended Complaint alleges three protected activities: (1) requesting religious accommodations from Option Care's Covid vaccine and weekly testing policy; (2) protesting her employer's disclosure of her medical choices in violation of HIPAA; and (3) opposing the weekly Covid testing requirement as violating her religious beliefs.

We go directly to Prida's third alleged protected activity—her protest of the weekly Covid testing requirement—to determine if Prida plausibly alleged that she protested the weekly Covid testing requirement to Option Care as unlawful discrimination. *See Sturgill*, 114 F.4th at 807; *Yazdian*, 793 F.3d at 644-45. The district court properly noted that Prida does not allege the specific communication in which she told Option Care that she believed its policy resulted in unlawful religious discrimination. The court examined Prida's affidavit opposing the Covid testing requirement, and concluded that it was too vague to properly allege unlawful discrimination. *See Booker*, 879 F.2d at 1313.

Option Care argues that Prida's Amended Complaint did not expressly assert that her affidavit constituted protected activity. But Prida alleges that she provided the affidavit in the days before her termination, and also that her protected activity included protesting Option Care's "unlawful weekly covid testing policies." A plausible way to read these pleadings is that Prida saw her affidavit as a protected activity protesting Option Care's weekly testing policy.

Prida's affidavit, moreover, quoted Title VII; was titled "an actual and constructive legal notice"; and alleged that she had the "right to retain employment without discrimination . . . protected by [Title VII]." R. 14-1, PageID 192-93. The affidavit's title could also be read as providing notice of a plan to bring legal action against Option Care for its Covid vaccine or testing policy. *See Yazdian*, 793 F.3d at 646. On this record, Option Care could have viewed these statements as vague in the broader context of the 19-page affidavit that had sprawling and confusing citations to HIPAA, international law, and the Bible and not construed them as a potential notice of a legal claim. The discovery and summary judgment stages, however, are the place for Option Care to develop such arguments. *See Swierkiewicz*, 534 U.S. at 514-15.

The district court also reasoned that Prida's pleadings lacked particular facts supporting a reasonable inference that her affidavit *caused* Option Care to discharge her, because Prida alleged that she submitted her affidavit several weeks after Option Care had told her (numerous times) that she would be discharged for not testing. Similarly, on appeal, Option Care argues that, before she submitted her affidavit, it had already decided to discharge Prida if she refused to test, and notes that Prida even mentions this "ultimatum" in her affidavit. But at the motion to dismiss stage, the facts pled need only support a causation inference. *See Sturgill*, 114 F.4th at 807. Prida alleged that her "religious beliefs and protected activity were the causes of Defendants' adverse employment action" and that her protected activity and discharge were close in time. R. 10,

PageID 102-05. In addition, Prida alleged that, soon after she sent her affidavit, the employee who set her work schedule attempted to minimize the number of times that she had to work in the office to minimize the tests she had to take. Yet a supervisor denied the schedule changes, resulting in her having to test more frequently allegedly out of animus to her opposing the testing requirement as a violation of her religious rights. These allegations, considered collectively, support a reasonable inference that Prida was also discharged because of her affidavit's contents. *See Jackson*, 999 F.3d at 349. Making all inferences favorable to Prida, Prida's affidavit constitutes protected opposition activity. Option Care's arguments may be probed in discovery. *See Swierkiewicz*, 534 U.S. at 514-15.

Because Prida's claim of Title VII retaliation is supported by allegations leading to a reasonable inference that she engaged in protected activity that resulted in her discharge, we reverse dismissal of her retaliation claim.

### C. Ohio State Claims

On appeal, Prida argues (1) that the district court improperly dismissed her Ohio Rev. Code § 4112 claims sua sponte without giving her a chance to brief them and (2) that the district court was wrong on the § 4112 merits. Sua sponte dismissal occurs when the district court grants relief that no party requested, and a district may dismiss a complaint sua sponte only when the plaintiff has been given the opportunity to respond to the court's reasons for the contemplated dismissal. *Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983). Prida's argument about the district court's sua sponte dismissal of her claim is best read as opposition to the district court's reasoning, not its procedure. The district court did not dismiss Prida's state law claims sua sponte—Option Care moved for their dismissal.

The district court dismissed Prida's Ohio state law claims on their merits. As it properly noted, the Ohio Supreme Court has interpreted § 4112 rights to encompass Title VII rights such that analogous Title VII and § 4112 claims may be analyzed together. *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).

The district court, however, in a separate Ohio state law analysis, incorrectly analyzed Prida's claims under the Title VII summary judgment standard as described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Keys*, 684 F.3d at 609. This case was resolved at the motion to dismiss stage, not the summary judgment stage. Above we apply the correct motion to dismiss standard to all of Prida's claims. Prida also brought Ohio state law claims that Option Care violated her rights under § 4112 based on religious discrimination, failure to accommodate her religious practice, and retaliation. These claims rise and fall with Prida's Title VII claims. *See Noble*, 391 F.3d at 720. For the reasons discussed above, therefore, dismissal of Prida's § 4112 religious discrimination, failure to accommodate, and retaliation claims is reversed.

## III. CONCLUSION

In light of the interceding case law following the district court's judgment, we **REVERSE** the district court's judgment and remand for further proceedings consistent with this opinion.